IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT P. PERALES and WENDY A. PERALES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| WELLS FARGO BANK, N.A., and THE SECRETARY OF VETERANS AFFAIRS BY AND THROUGH THEIR DULY AUTHORIZED AGENT VRM (VENDOR RESOURCE MANAGEMENT) | ) ) ) ) ) ) | NO. SA-12-CV-00515-DAE |
| Defendants. | ) ) ) | |
| _____ | ) | |

ORDER GRANTING WELLS FARGO'S MOTION FOR SUMMARY
JUDGMENT

On June 21, 2013, the Court heard a Motion for Summary Judgment

brought by Defendant Wells Fargo Bank, N.A. ("Wells Fargo").  (Doc. # 22.)

Amanda M. Schaeffer, Esq., and John W. Ellis, Esq., appeared at the hearing on

behalf of Wells Fargo; Robert P. Wilson, Esq., appeared at the hearing on behalf of

Plaintiffs Robert P. Perales and Wendy A. Perales (collectively, "Plaintiffs").

After reviewing the motion and the supporting and opposing memoranda, and

taking into consideration the argument of counsel, the Court **GRANTS** Wells

Fargo's Motion for Summary Judgment.

<u>BACKGROUND</u>

In February 2005, Plaintiffs entered into a loan transaction for $148,270.00 which was secured by a mortgage encumbering real property located at 246 Birchwood Bay, San Antonio, Texas 78253 (the "Subject Property").  (Doc. # 22, Exs. B-1, C-1, C-2.)  The Deed of Trust for the loan transaction included a "VA Guaranteed Loan and Assumption Policy Rider" through which the Department of Veterans Affairs guaranteed certain amounts under the loan.  (<u>Id.</u> Ex. C-2.)

Plaintiffs fell behind on their mortgage payments, and Wells Fargo granted Plaintiffs a loan modification in April 2009.  (<u>Id.</u> Ex. C-4.)  In 2010, Plaintiffs failed to make payments under the terms specified in the modified loan and requested a second modification.  (<u>Id</u>. Ex. C-5.)  Wells Fargo approved Plaintiffs for another repayment plan in November 2010.  (<u>Id.</u>)  Plaintiffs failed to make the initial payment under that plan.  (<u>Id.</u>)

In 2011, Plaintiffs again sought loan modification.  (<u>Id.</u>)  According to Plaintiffs, they fully cooperated with Wells Fargo in the modification process by repeatedly providing the necessary documents but were "shuffled to various different representatives who requested the same documentation previously sent."

2

(Doc. # 37 ¶ 9.)  During this process, in September 2011, Plaintiffs began to receive foreclosure notices for the Subject Property, but were allegedly informed by Wells Fargo that the loan was in modification review and that any notices would be rescinded.  (Id. ¶ 10; doc. # 35-1.)  In January 2012, Plaintiffs received notice of a February 2012 foreclosure sale.  (Doc. # 37 ¶ 11; doc. # 35-1.)  Plaintiffs again contacted Wells Fargo and were allegedly assured that, because the loan was in modification review, the foreclosure notices would be rescinded.  (Doc. # 37 ¶ 12; doc. # 35-1.)  On January 27, 2012, Plaintiffs received a letter denying their loan modification because the necessary documents had not been received.  (Doc. # 35-1 at 9.)

On February 7, 2012, a foreclosure sale of the Subject Property was conducted, and the property was sold to the Department of Veterans Affairs.  (Doc. # 22, Ex. B-2.)  The Trustee's Deed was recorded in the Real Property Records of Bexar County, Texas.  (Id.)

On May 18, 2012, Plaintiffs filed the instant lawsuit against Wells Fargo in the 37th Judicial District Court of Bexar County, Texas, alleging that the foreclosure was wrongful because Plaintiffs did not receive proper notice of foreclosure pursuant to Texas Property Code § 51.002.  (Doc. # 3.)  On May 18, 2012, the district court issued a temporary restraining order preventing Wells

3

Fargo from evicting Plaintiffs from the Subject Property until the court could hold a hearing on a preliminary injunction.  (Id.)  On May 24, 2012, Wells Fargo removed the action to this Court.  (Doc. # 1.)

On November 29, 2012, the Department of Veterans Affairs, acting through its authorized agent Vendor Resource Management ("VRM"), instituted a parallel state-court action for forcible detainer against Plaintiffs in the Bexar County Justice of the Peace Court.  (See doc. # 34.)  On December 13, 2012, the Justice of the Peace Court awarded VRM a Judgment of Possession of the Subject Property against Plaintiffs.  (Id.)  Plaintiffs then appealed to the Bexar County Court at Law.  (Id.)

On February 18, 2013, Plaintiffs amended their complaint in the instant action, adding VRM as a defendant.  (Doc. # 16.)  Plaintiffs also filed a "Motion for Injunction," which the Court construed as a motion for a preliminary injunction.  (Doc. # 17.)  Plaintiffs sought to enjoin their eviction from the Subject Property following the Judgment of Possession awarded to VRM in the forcible detainer proceeding.  (See id. at 2; doc. # 23 at 2.)  On February 28, 2013, the county court heard Plaintiffs' appeal and awarded VRM a Final Judgment of Possession.  (Id.)  This Court denied Plaintiffs' motion for a preliminary injunction.  (Doc. # 38.)

4

On February 25, 2013, Wells Fargo filed a Motion for Summary Judgment.  (Doc. # 22.)  On March 14, 2013, Plaintiffs sought leave to file a Third Amended Complaint.  (Doc. # 36.)  Wells Fargo indicated that its Motion for Summary Judgment was not rendered moot by Plaintiffs' Third Amended Complaint and filed a reply in support of its Motion for Summary Judgment.  (Doc. # 39.)  The Court granted Plaintiffs leave to file a Third Amended Complaint and directed them to file a sur-reply to address the arguments raised in Wells Fargo's reply in support of its Motion for Summary Judgment.  (Doc. # 40.)  Plaintiffs filed a sur-reply on April 15, 2013.  (Doc. # 42.)

STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that

5

establish the existence of a genuine issue for trial. <u>ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.</u>, 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  <u>Brown v. City of Hous.</u>, 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

For the reasons given below, Plaintiffs fail to raise a genuine issue of material fact as to their sole cause of action for wrongful foreclosure,[1] and summary judgment in favor of Wells Fargo is, accordingly, proper.

"The purpose of a wrongful foreclosure action is to protect

---

[1] At the hearing, Plaintiffs clarified that their sole cause of action in the Third Amended Complaint is for wrongful foreclosure under Texas law.

mortgagors against those sales where, through mistake, fraud, or unfairness, the sale results in an inequitably low price." In re Keener, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001).  In Texas, to prevail on a claim of wrongful foreclosure, a plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App. 2008); see also Sotelo v. Interstate Fin. Corp., 224 S.W.3d 517, 523 (Tex. App. 2007) ("The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate price.").

I.    Defect in Foreclosure Sale Proceedings

Under Texas law, if a "defect" or "irregularity" occurs in the foreclosure process which deters third parties from bidding, then a debtor has a claim against the mortgagee for damages resulting from the "unfair" sale. First State Bank v. Keilman, 851 S.W.2d 914, 921 (Tex. App. 1993) (citation omitted).  A mortgagee's duty is to avoid affirmatively deterring prospective bidders by acts or statements made before or during a foreclosure sale.  Id. However, "a mortgagee is under no duty to take affirmative action, beyond that required by statute or the deed of trust, to ensure a 'fair' sale."  Pentad Joint

Venture v. First Nat'l Bank, 797 S.W.2d 92, 96 (Tex. App. 1990).  In other words, a plaintiff must show that the mortgagee (1) failed to comply with statutory or contractual terms, or (2) complied with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure process.  See Keilman, 851 S.W.2d at 921–22.

Here, the parties' relationship is governed by the Texas Property Code and their written agreements—the Deed of Trust, the Note, and the April 2009 Loan Modification.  The Deed of Trust details specific requirements with which the Lender must comply before invoking the power of sale.  (See doc. # 22, Ex. C-2 at 13.)  Among other things, the Lender must provide the Borrower thirty days' advance notice to cure default and at least twenty-one days' advance notice of a foreclosure sale.  Id.  The Deed of Trust also provides:

> **Notices**.  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.

Id. at 10.  In addition to the Deed of Trust, Chapter 51 of the Texas Property Code sets specific requirements for non-judicial foreclosure.  See Tex. Prop. Code § 51.002.  For instance, the Code provides the same twenty-one-day notice

8

requirement prior to foreclosure on the Deed of Trust.  See id. § 51.002(g).

Additionally, § 51.002 provides that "[s]ervice of a notice under this section by

certified mail is complete when the notice is deposited in the United States mail,

postage prepaid and addressed to the debtor at the debtor's last known address."

Id. § 51.002(e).

        Plaintiffs concede that they received actual notice of foreclosure

pursuant to the terms of the Deed of Trust and the Texas Property Code.  However,

despite receiving actual notice of foreclosure, Plaintiffs argue that there was a

defect in the foreclosure proceedings because they had been assured by Wells

Fargo that any foreclosure notices could be disregarded since Plaintiffs were in the

process of loan modification.  In essence, Plaintiffs argue that Wells Fargo orally

modified their mortgage contract by promising not to take any action to foreclose

on the Subject Property while the parties were in loan modification negotiations.

        Wells Fargo contends that the statute of frauds bars any oral

modification of the mortgage.  In Texas, a loan agreement for more than $50,000 is

not enforceable unless it is in writing.  Tex. Bus. & Com. Code § 26.02(b).

Similarly, a promise relating to the sale of real estate must be in writing.  Id.

§ 26.01(b)(4).  "Generally, if a contract falls within the statute of frauds, a party

cannot enforce any subsequent oral material modification to the contract."  SP

Terrace, L.P. v. Meritage Homes of Tex., LLC, 334 S.W.3d 275, 282 (Tex. App. 2010) (citing Dracopoulas v. Rachal, 411 S.W.2d 719, 721 (Tex. 1967)). Explained another way, "if the terms of the contract lying outside the statute of frauds are severable and independent from the terms within the statute of frauds, then those terms do not need to be embodied in writing and can be proved by the existence of an oral agreement." Viper Telecom, LLC v. Lockheed Martin Corp., No. SA-10-CV-375-XR, 2010 WL 3056664, at * 3 (W.D. Tex. July 30, 2010) (citing Walker v. Tafralian, 107 S.W.3d 665, 669 (Tex. App. 2003)).

Because Plaintiffs' original mortgage loan was for $148,270.00—an amount greater than $50,000—and also relates to the sale of real estate, it is subject to the statute of frauds under Texas Business and Commerce Code § 26.01(b). Any oral agreement to delay foreclosure would be a material alteration of the Deed of Trust because an agreement to delay repayment itself falls under the statute of frauds. See Tex. Bus. & Com. Code § 26.02(a)(2) (defining a "loan agreement" that falls under the statute of frauds as one where a financial institution "agrees to loan or delay repayment of money, goods, or another thing of value") (emphasis added). Both state and federal courts in Texas have held that an agreement to delay foreclosure is subject to the Texas statute of frauds and, accordingly, must be in writing to be enforceable. See e.g., Martins v. BAC Home Loans Servicing,

10

L.P., No. 12-20559, ---F.3d----, 2013 WL 3213633, at *4 (5th Cir. June 26, 2013);

Milton v. U.S. Bank Nat'l Ass'n, 508 F. App'x 326, 328–29 (5th Cir. 2013) (per

curiam); Krudop v. Bridge City State Bank, No. 09-05-111, 2006 WL 3627078, at

*4 (Tex. App. Dec. 14, 2006) ("[A]ny agreement to forego or delay foreclosure . . .

would fall under the provisions of section 26.02(b), and be included under the

definition of a loan agreement in section 26.02(a)(2)."). Because the alleged oral

agreement to delay foreclosure on the Subject Property was never reduced to

writing in this case, it is unenforceable. See Ford v. City State Bank of Palacios,

44 S.W.3d 121, 138–39 (Tex. App. 2001).

Plaintiffs contend that promissory estoppel should overcome the

application of the statute of frauds. Promissory estoppel may be used to bar the

application of the statute of frauds and to allow the enforcement of an otherwise

unenforceable agreement. Exxon Corp. v. Breezevale Ltd., 82 S.W.3d 429, 438

(Tex. App. 2002) (citing Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982)).

"Promissory estoppel does not create liability where none otherwise exists, but

'prevents a party from insisting upon his strict legal rights when it would be unjust

to allow him to enforce them.'" In re Weekley Homes, L.P., 180 S.W.3d 127, 133

(Tex. 2005) (quoting Wheeler v. White, 398 S.W.2d 93, 96 (Tex. 1965)).

11

Under Texas law, the elements of promissory estoppel are: "(1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment." Ford, 44 S.W.3d at 139 (citing English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)). "When promissory estoppel is raised to bar the application of the statute of frauds, there is an additional requirement that the promisor promised to sign a written document complying with the statute of frauds." Ford, 44 S.W.3d at 139. On summary judgment, then, the nonmovant must present evidence to show the following:

> (1) the movant made an oral promise to sign a written agreement that satisfied the statute, and the nonmovant foreseeably relied on the promise to his detriment; or
>
> (2) the movant orally represented the statute of frauds had been satisfied, and the nonmovant relied to his detriment on the misrepresentation.

Id. (citing Moore Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 936–37 (Tex. 1973)).

Here, Plaintiffs have failed to present evidence that Wells Fargo made an oral promise to sign a written agreement that satisfied the statute of frauds or orally represented the statute of frauds had been satisfied. See id. As such, the alleged oral agreement delaying foreclosure remains barred by the statute of frauds. See Martins, 2013 WL 3213633, at *5. Additionally, the foreclosure sale occurred

after Plaintiffs received a letter indicating that Wells Fargo had denied their loan modification application.  Thus, Wells Fargo did not breach any oral agreement not to foreclose pending review of Plaintiffs' loan modification.

Plaintiffs argue that Wells Fargo was required to reissue notice of foreclosure following rejection of their loan modification application.  They contend that "[t]he practice of pursuing foreclosure at the same time a mortgagor [sic] is reviewing a [mortgage] loan for modification is known 'dual tracking'" and has been condemned by the Office of the Comptroller of Currency.  (Doc. # 42 ¶ 13.)  Plaintiffs cite no legal authority for the proposition that "dual tracking" directly contravenes or is incompatible with the statutory notice requirements of the Texas Property Code.  See Milton v. U.S. Bank Nat. Ass'n, No. 4:10–CV–538, 2012 WL 1969935 (E.D. Tex. May 31, 2012) (rejecting the argument that the mortgagee was "required to reissue a foreclosure notice once the modification application was denied").

Here, Wells Fargo satisfied the requirements of notice of foreclosure under § 51.002 of the Texas Property Code and under the terms of the Deed of Trust.  Wells Fargo sent Plaintiffs notices of default via certified mail.  (Doc. # 22, Exs. C-6, C-7.)  After Plaintiffs failed to cure default, Wells Fargo sent Plaintiffs a notice of acceleration and substitute trustee's sale.  (See id. Exs. A, A-1, A-2, A-3.)

These notices were sent via certified mail more than thirty days prior to the February 7, 2012 foreclosure.  See id.  Accordingly, Wells Fargo gave proper notice of foreclosure pursuant to both the Deed of Trust and the Texas Property Code.  Thus, Plaintiffs have failed to raise a genuine issue of material fact as to a defect in the foreclosure proceedings, and Plaintiffs' wrongful foreclosure claim fails as a matter of law.

II.     Grossly Inadequate Selling Price

The second element of a cause of action for wrongful foreclosure is "a grossly inadequate selling price."  Sauceda, 268 S.W.3d at 139.  In this case, Plaintiffs have not alleged or produced any evidence on summary judgment that the Subject Property was sold for a grossly inadequate selling price.  Furthermore, they have not alleged a "causal connection between the defect and the grossly inadequate selling price."  See id.  To the extent Plaintiffs contend that they need not demonstrate a grossly inadequate sales price, this argument fails because the Fifth Circuit has recently affirmed that Texas law requires such a showing.  See Martins, 2013 WL 3213633, at *4 (affirming summary judgment against a mortgagor where the selling price at the non-judicial foreclosure sale was not grossly inadequate).  Thus, even assuming Plaintiffs demonstrated a defect in the foreclosure sale proceedings, their claim fails because they have not produced any

14

evidence to support the second and third elements of a cause of action for wrongful foreclosure.  Wells Fargo is, accordingly, entitled to judgment as a matter of law on Plaintiffs' wrongful foreclosure claim.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Wells Fargo's Motion for Summary Judgment.  (Doc. # 22.)  Because Plaintiffs' sole cause of action fails, this action is **DISMISSED WITH PREJUDICE** as against all defendants.

IT IS SO ORDERED.

DATED: San Antonio, Texas, July 9, 2013.

_____
David Alan Ezra
Senior United States District Judge